SETH BEAM, APPELLANT, V. GOODYEAR TIRE & RUBBER COMPANY, A CORPORATION, APPELLEE.

42 N. W. 2d 293

Filed April 13, 1950. No. 32767.

*W. M. Elmen* and *Joseph J. Cariotto,* for appellant.

*Cline, Williams & Wright,* and *Warren C. Johnson,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is a workmen's compensation case. Seth Beam makes claim for compensation under the act against Goodyear Tire and Rubber Company, a corporation, his employer. From a decree by the district court for Lancaster County denying his claim and dismissing his action, his motion for new trial having been overruled, claimant appeals.

For the purpose of convenience in writing the opinion we shall refer to Seth Beam, the appellant, as claimant and the Goodyear Tire and Rubber Company, a corporation, as employer.

The principal question presented by this appeal is, did the claimant establish that he was injured in an accident arising out of and in the course of his employment which, although latent in character was progressive in nature and culminated in his becoming disabled, would entitle him to be compensated therefor under the provisions of the workmen's compensation statute?

The foregoing presenting a question of fact, the following principles are applicable in our consideration of the record:

"On any appeal to this court in a workmen's compensation case the cause will be here considered de novo upon the record." Solheim v. Hastings Housing Co., 151 Neb. 264, 37 N. W. 2d 212.

" 'Where the evidence is conflicting and cannot be reconciled, this court, upon a trial de novo in a workmen's compensation case, will consider the fact that the district court observed the demeanor of witnesses and gave credence to the testimony of some rather than to the contradictory testimony of others.' Cunningham v. Armour & Co., 133 Neb. 598, 276 N. W. 393." Ames v. Sanitary District, 140 Neb. 879, 2 N. W. 2d 530.

"The rule of liberal construction of the Workmen's Compensation Act applies to the law, not to the evidence offered to support a claim by virtue of the law. The rule does not dispense with the necessity that claimant prove his right to compensation within the rules above set out, nor does it permit a court to award compensation where the requisite proof is lacking." Hassmann v. City of Bloomfield, 146 Neb. 608, 20 N. W. 2d 592.

"The burden of proof is upon the claimant in a compensation case to establish by a preponderance of the evidence that personal injury was sustained by the employee by an accident arising out of and in the course

of his employment." Hassmann v. City of Bloomfield, *supra.* See Saxton v. Sinclair Refining Co., 125 Neb. 468, 250 N. W. 655.

"A compensation award cannot be based on possibilities or probabilities, but must be based on sufficient evidence that the claimant incurred a disability arising out of and in the course of his employment." Hassmann v. City of Bloomfield, *supra.*

"No recognition of the doctrine that because an injury may probably be the cause of an ailment the court should so find appears in our decisions. It may be so in other states, but not in this jurisdiction. The Nebraska rule, often pronounced and adhered to, is that in proceedings under the workmen's compensation law awards for compensation are not to be based upon possibilities or probabilities, but only upon sufficient evidence showing that the claimant has incurred a disability arising out of and in the course of his employment. Bartlett v. Eaton, 123 Neb. 599; Townsend v. Loeffelbein, 123 Neb. 791; Kuhtnick v. Carey, 124 Neb. 762." Saxton v. Sinclair Refining Co., *supra.*

" ' * * * symptoms of pain, and anguish, such as weakness, pallor, sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition may constitute objective symptoms as required by the statute.' (Manning v. Pomerene, 101 Neb. 127, 162 N. W. 492.) We approve this exposition of the meaning of the terms 'accident' and 'objective symptoms' as contained in the statute quoted, * * *." Van Vleet v. Public Service Co., 111 Neb. 51, 195 N. W. 467.

The record shows that the claimant, who was 49 years of age at the time of trial, was a pipe fitter by vocation and that he returned to work for his employer as such in February 1946. He was classified as a labor trainer at the time of the accident hereinafter referred to. While so employed, apparently in August 1946, he was at work repairing a leak in a water pipe. While so working his

left shoulder came in contact with an open electric switch carrying 440 volts of electricity. At the time of the contact he was holding the pipe with his left hand. When his left shoulder touched the switch he received an electrical shock. As a result of the shock he was knocked off balance. He was helped from the floor by a fellow employee. The shock caused him to be dazed and weak. He apparently does not have too clear a memory of exactly what happened. Within a short time after the accident he went to the pipe shop and worked there the balance of the day.

Thereafter he remained on the job and regularly performed all of the duties of his position until August 2, 1947. During this period he did not take off any time because of illness; nor did he have any medical attention, except possibly for a cold. During this period of time he put in a substantial amount of overtime. While there is some conflict in the evidence, particularly that of claimant himself, as to whether he had any symptoms after the accident in August 1946 and prior to August 2, 1947, which it can be said were the effects of the shock, we think it can be fairly stated that the only possible symptoms which occurred during this period that might relate thereto is the fact that his left arm would occasionally become tired when he used it for the purpose of heavy pulling or other heavy work. However, it does not appear to have handicapped him in any way. He testified it gave him no trouble. Except for the foregoing it appears he was in good health during this time.

Claimant did not feel very good on August 1, 1947, however, he reported for work on August 2, 1947. After he reported for work on that date he became ill. He had a severe cold. His neck was swollen on both sides; he could not get his breath; he was coughing; his head pounded; and he seemed to hurt all over. He was taken home in the employer's car and later that evening the family physician, Dr. R. C. Olney, was called to the home and he treated him for flu or a very severe acute upper

respiratory infection. Claimant has never been able to return to work.

After claimant became ill Dr. Olney treated him regularly for a long time but he did not seem to readily respond to the treatment. This condition continued through the following winter and into the next summer. Claimant seemed to have very little resistance. Whenever the condition began to clear up he would have a reoccurrence thereof. It was not until the next summer that it really cleared up. It was then that it was noticed that he had a limited use of his left arm and that the muscles of the upper arm and shoulder were smaller. The arm was weak, a numbness had developed therein, and he suffered pain therefrom. It was then that claimant informed his doctor of having received the electrical shock sometime in August 1946.

Dr. Olney, who had taken care of the claimant during all of this time, testified he did not know and was unable to say what effect the shock had upon his general health but thought it must have been a factor but was of the opinion that his arm condition was due thereto. Dr. J. W. Hervert was of the opinion that the shock had damaged the nerve cells in the spinal cord and that it was the cause of all his trouble.

Dr. J. Marshall Neely and Dr. O. V. Calhoun, testifying for the employer, were both of the opinion that the length of time that had elapsed before any symptoms showed up eliminated the possibility that claimant's condition was due to the electrical shock. Dr. Calhoun was also of the opinion that his condition was due to the infection which had caused his illness and which, in his opinion, resulted in his disability.

We have previously held that compensable disability can arise in cases where injury resulting from electrical shock was latent but progressive and culminated in disability. However, in those cases symptoms developed very shortly after the accident which indicated that something had happened, although its nature or the

extent thereof was not immediately apparent or known. See, Travelers Insurance Co. v. Ohler, 119 Neb. 121, 227 N. W. 449; Keenan v. Consumers Public Power District, *ante* p. 54, 40 N. W. 2d 261.

Here we do not have a similar situation. No symptoms of any significance developed until after August 2, 1947, when claimant became ill with flu or a severe upper respiratory infection. To say that it, and claimant's condition subsequent to August 2, 1947, was caused by this shock is to engage in speculation and conjecture upon which this court has often said such claim cannot be based. From the record as a whole we find the facts do not support the claim that claimant's disability is the result of the shock he received sometime in August 1946. We find the judgment of the district court to be correct. Other questions are raised by the appeal but their determination becomes immaterial in view of the foregoing.

The judgment of the district court is affirmed.

AFFIRMED.