GEORGE DIETZ, APPELLEE, v. STATE OF NEBRASKA, APPELLANT.

59 N. W. 2d 587

Filed July 3, 1953.   No. 33352.

*Clarence S. Beck*, Attorney General, and *Clarence A. H. Meyer*, for appellant.

*Max Kier*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.
This is a workmen's compensation case. After hear-

ing by one judge of the compensation court, it was found that plaintiff, George Dietz, who concededly was injured in an accident arising out of and in the course of employment by defendant, State of Nebraska, was totally disabled as of June 1, 1952, and entitled to compensation therefor so long as such total disability persisted. It was found that his earnings at time of accident were sufficient to entitle him to the maximum rate. Thus, he was awarded $26 each week for 300 weeks from and after June 1, 1952, or until total disability should sooner terminate, and should total disability continue more than 300 weeks from and after June 1, 1952, he was awarded $20 each week so long as total disability should thus persist. Defendant was also ordered to pay $55 for unpaid medical services rendered plaintiff. The award specifically ordered that proceedings for modification thereof might be had at any time by agreement of the parties or upon application of either party, at intervals of not less than 6 months from August 8, 1952, date of the award, for increase or decrease of incapacity, due solely to plaintiff's injury, in conformity with section 48-141, R. R. S. 1943.

Thereafter defendant waived rehearing and appealed to the district court where, upon trial de novo, a judgment was rendered, identical in all material respects with the award rendered by the compensation court, except that $125 additional unpaid medical expenses were also ordered paid by defendant, together with an allowance of $250 for services by plaintiff's attorney in that court.

Defendant's motion for new trial was overruled, and it appealed, assigning substantially that: (1) The trial court acted without or in excess of its powers in rendering the judgment, because the award in the compensation court was obtained in contravention of section 24-327, R. R. S. 1943; (2) the findings and judgment were contrary to law and not supported by the evidence; and (3) the findings of fact do not support the judgment.

We conclude that the assignments should not be sustained.

We decide that the first assignment has no merit. Under the factual situation presented here, it cannot be said that plaintiff practiced any fraud against the State in the proof, statement, establishment, or allowance of his claim which would ipso facto forfeit the same as provided by section 24-327, R. R. S. 1943.

In that connection, on June 25, 1952, plaintiff wrote his own counsel a letter. Therein, after reciting the facts with relation to happening of the accident and certain injuries resulting therefrom about which there is no dispute, and after reciting his then claimed physical disability, which is supported by the testimony of two physicians who examined and cared for him, plaintiff said: "As long as I am in my present condition, I feel that I will be unable to work full time or part time at any job." That letter and copy of a medical report of one of plaintiff's physicians supporting the same were transmitted by plaintiff's counsel in a letter to counsel for defendant before trial in the compensation court. Plaintiff was not present at that hearing, but one of his physicians testified that he was totally disabled as a result of the accident and injuries received therein, and the above letter was received in evidence, apparently without objection. In the district court both plaintiff's letter and the correspondence of his counsel transmitting it to counsel for defendant were offered in evidence by defendant and received without objection.

Defendant argued that plaintiff was guilty of fraud upon the State because he was doing some light guard work at the time his letter was written, and in his application for such work had reported that he had recovered from his disability. As hereinafter observed, plaintiff, in need financially, had a right to do or try to do some light work if he could, without waiving his claim of total disability. As a matter of fact, however, there is competent evidence in the record that he was physi-

cally unable to continue with the job, which only required him to sit and guard personal property of value. In any event, the primary issue in the compensation court, district court, and here, was and is the extent of plaintiff's disability caused by the accident. His statement aforesaid was simply a layman's opinion, which the testimony of his own physicians and the circumstances support. In Tucker v. Paxton & Gallagher Co., 153 Neb. 1, 43 N. W. 2d 522, a related situation was presented. Therein it is said: "That contention is without legal basis. Whether or not he received an injury as a result of the accident could be determined only through scientific investigation and examination, and he as an ordinary layman may not be charged with such obscure knowledge. Any statement therefore of his with regard to whether or not he sustained the injury complained of as the result of the accident in question may not be considered binding upon him and may not have the effect of defeating the scientific evidence in relation thereto. Flesch v. Phillips Petroleum Co., 124 Neb. 1, 244 N. W. 925; Keenan v. Consumers Public Power District, 152 Neb. 54, 40 N. W. 2d 261."

To hold that plaintiff was guilty of fraud in the manner here charged would defeat every compensation claim against the State, the justice of which was primarily dependent upon scientific investigation and examination rather than the opinion of the ordinary employee involved, with regard to his injuries received or the nature or extent of his disability. Rahfeldt v. Swanson, 155 Neb. 482, 52 N. W. 2d 261, relied upon by defendant, is entirely distinguishable from the case at bar.

We turn then to well-established rules of law applicable to the situation otherwise presented by the record. This court has recently reaffirmed that: "On any appeal to this court in a workmen's compensation case the cause will be here considered de novo upon the record.

"The burden of proof is upon the claimant in a compensation case to establish by a preponderance of the evi-

dence that personal injury was sustained by the employee by an accident arising out of and in the course of his employment. * * *

"The rule of liberal construction of the Workmen's Compensation Act applies to the law, not to the evidence offered to support a claim by virtue of the law. The rule does not dispense with the necessity that claimant prove his right to compensation within the rules above set out, nor does it permit a court to award compensation where the requisite proof is lacking." Miller v. Livestock Buying Co., *ante* p. 51, 58 N. W. 2d 596.

The evidence in this case, both lay and medical, adduced at trial de novo in district court, was irreconcilable, and directly conflicting in many respects with regard to the extent of plaintiff's disability. As stated in Sporcic v. Swift & Co., 149 Neb. 246, 30 N. W. 2d 891: "It is obvious that the evidence in the instant case is irreconcilable and in direct conflict. This being true, this court will consider the trial court's observation of the witnesses and their manner of testifying, and also that the trial court must have accepted one version rather than the opposite. See Peterson v. Winkelmann, 114 Neb. 714, 209 N. W. 499; Graham Ice Cream Co. v. Petros, 127 Neb. 172, 254 N. W. 869." As stated in Beam v. Goodyear Tire & Rubber Co., 152 Neb. 663, 42 N. W. 2d 293: " ' "Where the evidence is conflicting and cannot be reconciled, this court, upon a trial de novo in a workmen's compensation case, will consider the fact that the district court observed the demeanor of witnesses and gave credence to the testimony of some rather than to the contradictory testimony of others." Cunningham v. Armour & Co., 133 Neb. 598, 276 N. W. 393.' Ames v. Sanitary District, 140 Neb. 879, 2 N. W. 2d 530." Also, as reaffirmed in Holtzendorff v. Eppley Hotels Co., 140 Neb. 525, 300 N. W. 411: " 'Cogent reasons that strengthen the opinion of an expert witness as to a scientific fact in issue and tend to weaken opposite expert opinions not so supported may determine the

issue.' Flesch v. Phillips Petroleum Co., 124 Neb. 1, 244 N. W. 925."

In Sporcic v. Swift & Co., *supra,* it is said: "The fact that the plaintiff has been doing light work does not bar him from recovering compensation. In Elliott v. Gooch Feed Mill Co., on rehearing, 147 Neb. 612, 24 N. W. 2d 561, this court held: 'An employee may be totally disabled for all practical purposes and yet be able to obtain trivial occasional employment under rare conditions at small remuneration. The claimant's status in such respect remains unaffected thereby unless the claimant is able to get, hold, or do any substantial amount of remunerative work either in his previous occupation or any other established field of employment for which he is fitted.' " See, also, Elliott v. Gooch Feed Mill Company, 147 Neb. 309, 23 N. W. 2d 262, where this court held: "For workmen's compensation purposes, 'total disability' does not mean a state of absolute helplessness, but means disablement of an employee to earn wages in the same kind of work, or work of a similar nature, that he was trained for, or accustomed to perform, or any other kind of work which a person of his mentality and attainments could do.

"A workman who, solely because of his injury, is unable to perform or to obtain any substantial amount of labor, either in his particular line of work, or in any other for which he would be fitted except for the injury, is totally disabled within the meaning of the workmen's compensation law." See, also, Franzen v. Blakley, 155 Neb. 621, 52 N. W. 2d 833.

In that connection, also, it is the rule that an employee who has established by a preponderance of the evidence that he had an accident arising out of and in the course of his employment, which, as here, resulted in compensable injury, may be allowed compensation for neurosis if it was proximately caused by the injury and resulted in disability. Lee v. Lincoln Cleaning & Dye

Works, 145 Neb. 124, 15 N. W. 2d 330; Marler v. Grainger Bros., 123 Neb. 517, 243 N. W. 622.

Bearing in mind the foregoing rules, we have examined the evidence in order to determine the extent of plaintiff's disability, the only issue remaining in the case. Upon other issues the evidence is without dispute. On March 18, 1947, plaintiff, then in good health, was reemployed by defendant at the State Reformatory for Men as a guard in the cell block. Subsequently he served in other positions of responsibility. On October 23, 1951, date of the accident and injuries resulting therefrom, he was in good health and concededly a good, able, faithful employee, in charge of the entire institution from 11 p. m. until 7 a. m. At time of trial in district court he was 58 years old.

At about 5:15 a. m. on October 23, 1951, an escaping inmate struck plaintiff five times with a heavy angle iron upon and about his head. As a result, there were long, deep cuts on the left side of plaintiff's head. He received a concussion, his glasses were broken, and, bleeding profusely, he was knocked down, stunned but still conscious. He was first taken to the reformatory hospital, where his head was wrapped in towels. He was then taken out to his own car, and, as directed, proceeded to St. Elizabeth Hospital, where he fainted or blacked out. In the emergency room there at about 7 a. m. he was given medical care authorized by defendant. It required 16 sutures to close his head wounds, on the left side above his ear. X-rays taken disclosed no fractures of the skull. His physicians desired to keep him in the hospital longer because his injuries were severe, but plaintiff was conscious and reluctant to stay, so at about 10 a. m. he was permitted to go home. Thereafter treatment was continued for some time in the physician's office, and plaintiff was kept under observation until December 10, 1951.

He remained off duty 25 days, and was not then recovered or feeling well, but at the earnest solicitation of

the superintendent at the reformatory, where there was a shortage of competent help, he reported back to work. However, his physical condition did not improve and his physician saw him again in May 1952. At that time he was given a physical examination and found to be in a progressively worse condition. Therefore, his physician sent him to a neuropsychiatrist for further examination and treatment. There is competent evidence that at that time, as a result of the accident and injuries received therein, plaintiff was suffering from insomnia; throbbing or dull headaches on down his neck; nervousness; inability to concentrate; tension and anxiety; carried his head to one side; had tics or twitches of his head, face, and eyes; tremors of voice at times; and spasm or jerks of his muscles with intermittent pain, especially in his lower extremeties. His right leg and arm were weak, as defendant's own physicians concede. The fingers of his right hand would become numb and articles would drop from his grip. His right foot would become numb; he would become dizzy; and he would have short blackouts called by his physicians Jacksonian convulsions, or post-traumatic epilepsy, caused by injury to his brain. He was unable to continue his work with defendant so on June 1, 1952, he quit and filed his petition in the compensation court on June 3, 1952.

Thereafter, the people with whom he roomed were driving to California, so, being unable to drive his own car, he rode there with them where, in need of finances, he undertook to do some light guard work, but was unable to continue with it. There he had a black-out and fell on the loading platform of a hotel where he was so employed.

As we view it, there is ample competent evidence in this record to sustain the conclusion that plaintiff was on June 1, 1952, and at time of trial, totally disabled as a result of the injuries received by him on October 23, 1951. In that connection, two physicians testified for plaintiff and two for defendant, who both averred that

plaintiff was altogether fair and honest with them during their physical examination of him. All agree that plaintiff had a disability resulting from the accident and injuries. They differ mainly with regard to the extent of his disability, the name for it, and its prognosis. Plaintiff's physicians testified that he was totally and permanently disabled, with, among other things Jacksonian convulsions or post-traumatic epilepsy, which condition would in all probability grow progressively worse. Both of defendant's physicians testified that plaintiff doubtless suffered brain concussion, that his right arm and leg were weak, and that he had a permanent partial disability. One testified that such disability was from 10 to 20 percent. The other could not estimate it, but refused to say that it was not at least 50 percent. Both called it traumatic neurosis and one predicted a favorable prognosis, while the other refused to speculate on the question of prognosis. Such physicians, however, did not make use of the electroencephalogram as did plaintiff's neuropsychiatrist in order to diagnose or determine the existence of brain injuries. One of defendant's physicians admitted that use of the electroencephalogram was a recognized procedure for such purpose, but the other testified that it was not infallible and he did not approve of its use.

It is true, as held in Hamilton v. Huebner, 146 Neb. 320, 19 N. W. 2d 552, 163 A. L. R. 1, that: "The value of the opinion of an expert witness is dependent on, and is no stronger than, the facts on which it is predicated. The opinion has no probative force unless the premises upon which it is based are shown to be true." However, contrary to defendant's contention, that rule is not controlling here. In such case there was no competent proof that an accident ever occurred which caused any injuries. Here the opinions of plaintiff's experts were predicated not only upon physical observation, examination, and treatment of plaintiff, but also upon corroborative facts and circumstances otherwise appearing

in the record. Without dispute, plaintiff had an accident arising out of and in the course of his employment from which he suffered injuries and disability. The only question was how much.

We conclude that for the reasons heretofore stated the judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendant, including an allowance of $350 for services of plaintiff's attorney in this court, as provided in section 48-125, R. R. S. 1943.

AFFIRMED.