FANNIE RUDERMAN, APPELLEE, v. FORMAN BROS. ET AL., APPELLANTS.

60 N. W. 2d 658

Filed November 6, 1953. No. 33394.

*Edwin Cassem* and *Kennedy, Holland, DeLacy & Svoboda,* for appellants.

*Monsky, Grodinsky, Good & Cohen,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,. YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action by Fannie Ruderman, plaintiff and appellee, for the recovery of death benefits under the workmen's compensation law against the defendants and appellants, Forman Bros. and Ocean Accident and Guarantee Corporation.

Plaintiff is the widow of Harry Ruderman who died on January 7, 1952. He died suddenly while in the employ of the defendant Forman Bros. The defendant. Ocean Accident and Guarantee Corporation was the workmen's compensation insurance carrier for Forman Bros.

The full workmen's compensation court allowed a recovery. From the award of that court an appeal was taken to the district court where again a recovery was allowed and judgment was rendered in favor of plaintiff. From the judgment of the district court the defendants have appealed.

The only question presented by the appeal is that of whether or not the evidence is sufficient to sustain a finding that Harry Ruderman came to his death as the result of an accident within the meaning of the workmen's compensation law. It is undisputed that he died while in the employ of Forman Bros. and while engaged in the performance of his assigned duties. He and another employee were engaged in plastering a house and while so engaged he fell from the position occupied by him and died within a matter of very few minutes.

The only evidence pertaining to the fall was furnished

by Harry Trinan, a fellow employee. This witness testified that he and the deceased were plastering a stair well; that in the well was a temporary stairway without risers; that the witness was working under the stairway and deceased was plastering above it; that deceased was working on about the fourth step from the top; that deceased finished plastering one wall and started to turn to the other side wall; that deceased had a straightedge made of aluminum about 5½ feet in length which was used to straighten or even plastering; that the instrument was about 5 inches wide and 1½ inches thick tapering to an edge of about ¼ of an inch; that through the stairway treads the witness saw the straightedge tangled up between the legs of deceased and deceased said "uh" and fell right down; that the straightedge just slipped between his legs; and that he could not tell what happened only that the deceased was turning and the straightedge was between his legs.

In order to get to the deceased the witness said first that he had to go around three rooms and then that he had to go around a room. He estimated that death ensued in 2, 3, or 4 minutes.

An autopsy was conducted by Dr. Harlan L. Papenfuss, acting coroner's physician, but the report is not in evidence. The physician who conducted the autopsy testified as a witness. This witness gave it as his opinion that Ruderman died from an episode of acute coronary insufficiency, in other words, lack of nutrition to the heart on a heart which had been severely and previously damaged, a coronary heart disease.

The autopsy disclosed a heart which had become badly damaged over an indefinite period before the death. We do not deem it necessary to describe the damage here, but only to say that it was of such a quality that there was a preexistent and constant imminence of fatal consequences.

Dr. Abraham S. Rubnitz, a specialist in the field of pathology, attended the autopsy and as a witness was

found to be in substantial agreement with Dr. Papenfuss as to the immediate cause of death and as to the preexisting condition of Ruderman.

This witness took into consideration the preexisting condition of Ruderman, the autopsy findings, and the history of the fall as it appears in the testimony of the witness Trinan, and with these elements as a basis, testified: "In my opinion at that time, we thought Mr. Ruderman had changes there, heart changes about the coronary vessels that would put him as a substandard —I should say in a substandard condition, and the fall which under ordinary conditions, that is in a younger individual with a sound heart, perhaps would result in an acceleration of the rate of the heart, and perhaps would not result in any disastrous termination, in the condition like his where he had a substandard condition of the heart, it most likely precipitated a ventricular fibrillation. I feel that the fall served as a trigger mechanism, in other words the same as Dr. Papenfuss expressed himself in his protocol, to produce the series of events which led to death."

A ventricular fibrillation is a flutter of the muscle in the wall of the ventricle.

The witness testified that ventricular fibrillation could not be demonstrated by any organic change. It therefore could not be demonstrated in this case. It could only be inferred. The witness based his conclusion on inferences and not on anything which could be demonstrated.

On the trial of this action before a single judge of the workmen's compensation court, the following appears as a part of the examination of this witness:

"Question: Well now, let me be sure that I have got this straight in my own mind. At the autopsy we don't have any way of establishing that there was a ventricular fibrillation, do we? Answer: No; nobody established that. Question: All we know is that we have here a heart with extensive coronary disease changes? Answer:

That is right. Question: In a sixty-two-year-old man these changes are such as we commonly see in a coronary death? Answer: Yes. Question: And we do know that those individuals collapse sometimes just while sitting at the table eating a meal, or even lying on the couch in the living room, and sitting in a chair reading the paper, it frequently happens? Answer: Yes. Question: Now then, if this man was standing on a stairway and his heart failed, of course he would fall, would he not? Answer: I presume so. Question: And it is true that we have to conjecture as to which occurred first, the fall or the cardiac failure? Answer: Yes."

This testimony does not in substance depart from the testimony given before the full workmen's compensation court which was the testimony presented to the district court.

The other evidence adduced will not be reviewed herein since such a review would furnish no aid in the determination of the matters involved.

In order that there may be a recovery in an action under the workmen's compensation law it must be proved that an accident occurred arising out of and in the course of employment producing injury and disability or death. As to this proposition there is no controversy in this action.

An accident within the meaning of the statute shall be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury. § 48-151, R. R. S. 1943; Shamp v. Landy Clark Co., 134 Neb. 73, 277 N. W. 802; Schwabauer v. State, 147 Neb. 620, 24 N. W. 2d 431.

The burden is on the plaintiff in a workmen's compensation case to prove by a preponderance of the evidence that an accident occurred. Tucker v. Paxton & Gallagher Co., 153 Neb. 1, 43 N. W. 2d 522.

"A compensation award cannot be based on possibilities or probabilities, but must be based on sufficient

evidence that the claimant incurred a disability arising out of and in the course of his employment." Beam v. Goodyear Tire & Rubber Co., 152 Neb. 663, 42 N. W. 2d 293. See, also, Hassmann v. City of Bloomfield, 146 Neb. 608, 20 N. W. 2d 592.

"* * * if an inference favorable to the applicant can only be reached by speculation or conjecture, then the applicant cannot recover." De Bruler v. City of Bayard, 124 Neb. 566, 247 N. W. 347. See, also, Beam v. Goodyear Tire & Rubber Co., *supra*.

Of course these rules apply in case the claim is made by the widow or other representative of a deceased person.

Under the evidence as summarized herein and these rules of law this appeal must be determined.

Ruderman fell, and he died as the result of the failure of his heart to continue to function. The question for determination is narrowed to this: Did the heart fail to function because of the fall, or was the fall a result of the failure of the heart?

The evidence on which plaintiff relies leaves any answer to this question in the realm of uncertainty. The answer given by the plaintiff is based in its terms and essence on probability, possibility, speculation, and conjecture, and nothing more.

This being true the plaintiff has failed to sustain the burden of proving that Harry Ruderman came to his death as the result of an accident within the meaning of the workmen's compensation law.

Accordingly the judgment of the district court should be and it is reversed and the case dismissed.

REVERSED AND DISMISSED.