RALPH McCAULEY, APPELLANT, v. DON HARRIS, DOING BUSINESS AS HARRIS SALES COMPANY, APPELLEE.

82 N. W. 2d 30

Filed April 5, 1957. No. 34141.

*Wade H. Ellis,* for appellant.

*Stubbs & Metz,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is a workmen's compensation case appealed from the district court for Box Butte County. Ralph Mc-Cauley began this action on September 1, 1955, by filing his petition in the Nebraska Workmen's Compensation Court against Don Harris, doing business as Harris Sales Company. On November 10, 1955, a member of that court awarded McCauley $28 a week for 8 weeks on the basis of his having suffered temporary total disability for that length of time from and after May 10, 1955. In addition thereto he was awarded necessary medical care in at least the amount of $59. McCauley thereupon waived his right to rehearing before the full compensation court and appealed directly to the district court for Box Butte County. The district court awarded McCauley the sum of $283 in full satisfaction of all disability and necessary medical expenses, being $28 a week for 8 weeks of temporary total disability and $59 for necessary medical services. McCauley filed a motion

for new trial and, from the overruling thereof, perfected this appeal.

In his petition for rehearing filed in the district court appellant alleges that as a result of a sprained ankle and a resulting coronary condition he was totally disabled from May 10, 1955, for a period of 13 weeks and thereafter partially permanently disabled to the extent of 50 percent. Based thereon he asks for whatever he may be entitled to under the Nebraska Workmen's Compensation Act.

An appeal to this court in a workmen's compensation case is considered and determined de novo upon the record. Feagins v. Carver, 162 Neb. 116, 75 N. W. 2d 379.

Appellant, 47 years of age, was employed by appellee as a bakery goods routeman in Alliance, Box Butte County, Nebraska. For these services he was being paid at the rate of $70 a week plus certain commissions. About 6:40 a.m. on Monday, May 9, 1955, while on the job, appellant severely sprained his right ankle in the course of his employment. It happened when he jumped from a platform or wooden dock at the rear of appellee's warehouse in Alliance which was being used for the loading of delivery trucks. The dock was between 4½ and 5 feet high and had no stairs, steps, or other means for getting on or off. The injury suffered by appellant resulted when his right foot landed on a round stick which caused it to turn and throw him to the ground.

Appellant continued on the job and made his deliveries. In doing so he had to get in and out of the delivery truck to get the bakery products and in some instances had to go up and down stairs to deliver them to customers. Some of the cartons of bakery goods which he delivered weighed as much as 25 pounds. His sprained ankle began to hurt so between 10:15 and 10:30 a.m. he consulted Dr. John S. Broz, a local doctor, about it. Dr. Broz examined and X-rayed it but found no fractured bones, only sprained ligaments. Appellant went home for lunch at which time his wife put a cold pack

on his swollen ankle. After lunch appellant returned to his job. However, about 3:30 p.m. appellant again went to see Dr. Broz. Dr. Broz then advised appellant to go home, rest, elevate his right foot, and treat the swollen ankle with alternating hot and cold packs. This he did. At this time the ankle was badly swollen and was becoming discolored.

Appellant did not feel good on Tuesday, May 10, 1955, so he stayed home. He spent most of his time that day resting. He did so either in bed or on a davenport, sitting up very little. About noon, or shortly thereafter, he started to have some pain in his chest in the area of his heart. These pains were not severe at first, in fact he was able to sit at the table and eat his evening meal. Shortly after 11:15 p.m. that night, when he attempted to go to the bathroom, appellant was stricken with a severe coronary occlusion. As a result Dr. Broz was called immediately. He arrived about 11:45 p.m., found appellant in a very critical condition, and gave him a hypodermic. Thereafter Dr. Broz called for an ambulance and had appellant removed to St. Joseph's hospital where he remained for some 36 days, the first 10 or more of which were spent under an oxygen tent. On June 15, 1955, he was released from the hospital but remained in his home under a doctor's care.

On August 8, 1955, appellant was permitted to return to work on his former job, although directed to take it easy and slow up. This he did. For over a month he only supervised the job and thereafter he worked regularly but it now takes him about 2 hours longer each day to perform the same duties he formerly did.

"A compensable injury within the Workmen's Compensation Act is one caused by an accident arising out of and in the course of the employment." Feagins v. Carver, *supra*.

Before compensation can be awarded an employee under our law it is required that he prove, by a preponderance of the evidence, that his injury and disabil-

ity, if any, were caused by an accident arising out of and in the course of his employment. Pixa v. Grainger Bros. Co., 143 Neb. 922, 12 N. W. 2d 74; Jones v. Yankee Hill Brick Manuf. Co., 161 Neb. 404, 73 N. W. 2d 394; Feagins v. Carver, *supra.*

As stated in Anderson v. Cowger, 158 Neb. 772, 65 N. W. 2d 51: "Such facts must be proved by the claimant by sufficient evidence leading to the direct conclusion, or by a legitimate legal inference therefrom, that such an accidental injury occurred and caused the disability. There must be shown a causal connection between an accident suffered by the claimant and the cause of his disability." See, also, Gilcrest Lumber Co. v. Rengler, 109 Neb. 246, 190 N. W. 578, 28 A. L. R. 200; Jones v. Yankee Hill Brick Manuf. Co., *supra.*

In this respect, we said in Jones v. Yankee Hill Brick Manuf. Co., *supra:* "The rule of liberal construction of the Workmen's Compensation Act applies to the law, not to the evidence offered to support a claim by virtue of the law. The rule does not dispense with the necessity that claimant shall prove his right to compensation within the rules above set forth nor does it permit a court to award compensation where the requisite proof is lacking." See, also, Feagins v. Carver, *supra.*

The evidence adduced establishes appellant suffered a severe injury to his right ankle as the result of an accident arising out of and in the course of his employment by appellee. The question is, has appellant established a causal connection between the accident resulting in a severely sprained ankle and the coronary occlusion, the latter being the cause of his permanent disability? In this respect the medical testimony is the key factor. A compensation award cannot be based on possibilities, probabilities, or speculation and if an inference favorable to the claimant can only be reached on the basis thereof then he cannot recover. Ruderman v. Forman Bros., 157 Neb. 605, 60 N. W. 2d 658; Murray v. National Gypsum Co., 160 Neb. 463, 70 N. W. 2d 394; Jones v. Yankee

Hill Brick Manuf. Co., *supra*; Feagins v. Carver, *supra*. As stated in Jones v. Yankee Hill Brick Manuf. Co., *supra*: "An award of compensation under the Workmen's Compensation Act may not be based on possibilities, probabilities, or speculative evidence."

Dr. Friedrich W. Niehaus of Omaha, Nebraska, a specialist in internal medicine and cardiology, completely examined appellant on July 25, 1955, at his office. He found appellant was then suffering with intercostal neuralgia but found that several months before he had had a coronary occlusion. In answer to questions based on appellant's injury and his continuing to work on May 9, 1955, Dr. Niehaus testified it could have caused the coronary occlusion but thought it very highly probable it did not, that is, he could not see how it could have been a precipitating cause. He went on to testify that its happening therefrom would be a very, very remote possibility and did not think there was any connection between the two. His overall view is very well expressed in his report as follows: "It is extremely doubtful, in fact untenable that a sprained ankle would be the precipitating factor in a coronary occlusion. It seems to me the two conditions are coincidental and not related." Dr. Niehaus emphasized the fact that the lapse of time between the injury and the symptoms leading to the coronary occlusion made the ankle injury become less significant.

Dr. Thomas D. Fitzgerald, an associate of Dr. Broz in the Broz Clinic at Alliance, observed appellant in the hospital on and after either May 12 or 13, 1955. He testified it was difficult to say just what causes any coronary; that it was conceivable, if the shock of the pain was sufficient, that that could actually have caused it; that appellant's injury and his continuing to work could have aggravated the original condition; that there is the possibility that that could have caused a weak heart condition several days after the original shock; but that he would think more about it if it had happened at 3

in the afternoon (Monday) rather than 28 hours later.

Dr. Broz testified that he felt the sprain to appellant's ankle definitely precipitated the coronary occluson stating it resulted from the sprained ankle and the extra burden or overload placed on him when he kept on working. However, we think Dr. Broz's evidence is considerably weakened because he was under the mistaken belief that appellant's chest and heart pains had started by 3:30 p.m. on Monday, when, as a matter of fact, they did not start until after noon on Tuesday. This conclusion is based on the significance that both Drs. Niehaus and Fitzgerald placed on the lapse of time as it relates to causal connection.

We have come to the conclusion that it would be very speculative to permit appellant to recover for his condition resulting from the coronary occlusion as the evidence adduced shows that it is only a possibility that it resulted from the accident to appellant's right ankle and his continuing to work thereon for the balance of the day on which he received the injury.

The question then arises, does the evidence adduced support the award rendered by the trial court? There is no question but what appellant is entitled to be paid for the temporary disability he suffered because of the sprained ankle but there is nothing in the evidence adduced to show what that was, nor do we think the record supports any award for necessary medical expense arising from the sprained ankle to the extent of $59. We think the extent of such medical expenses, as shown by the record, is $12.

We reverse the judgment rendered by the district court with directions that the appellant be given an opportunity to adduce evidence to show what length of time the sprained ankle alone would have kept him temporarily off the job and that he be awarded temporary total disability for that length of time in accordance with the Workmen's Compensation Act together with the sum of $12 for medical expenses. In all other re-

spects appellant's claim should be denied.   Costs are taxed to appellant.

REVERSED AND REMANDED WITH DIRECTIONS.