·HELEN C. NELSON, APPELLANT, v. FRENCHMAN-CAMBRIDGE IRRIGATION DISTRICT, A CORPORATION, APPELLEE.

95 N. W. 2d 201

Filed February 27, 1959. No. 34529.

*Doyle, Morrison & Doyle,* for appellant.

*Maupin, Dent, Kay & Satterfield* and *William E. Morrow, Jr.,* for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

The plaintiff brought this action under the Workmen's Compensation Act to recover benefits for the

death of her husband, whose death is alleged to have resulted from an accident arising out of and in the course of his employment. The trial court found for the defendant and dismissed the action. The plaintiff has appealed.

The deceased at the time of his death was the superintendent of the Frenchman-Cambridge Irrigation District. He was employed at a salary of $6,000 a year. He was required as a part of his duties to travel over the district to supervise the work of ditchriders and see to it that a proper distribution of water was made to users of irrigation water.

On July 29, 1957, he was found dead in a district pickup truck generally used by him in the performance of his duties. The evidence shows that the pickup truck was found in a ditch along a county road a short distance east of Arapahoe, Nebraska, within the boundaries of the district. The deceased was on the seat with his head near the right door. His face was near the front edge of the seat facing the floor. There was a small spot of blood on the seat cushion and some small spots of blood on the right door extending up to within a few inches of the glass portion of the door. The evidence shows also that there was blood on the floor of the car, the estimates of the amount varying from two tablespoons to one quart. Blood was observed about the nose and mouth. There was a cut on the right side of the head near the hairline from one-half inch to three-quarters of an inch in length from which blood had escaped. His hat was crushed and his glasses broken. A small notebook was found on the floor. There were no outward evidences of injury other than the cut on the head.

There were car tracks discernible from the point where the truck went into the ditch for approximately 60 feet. They indicated that the car had angled across the road from right to left in a straight line for that distance. It was evident that no control over the car was

exercised during the time it traveled this 60 feet before it went into the ditch.

It is the contention of the defendant that the death of the deceased was the result of heart disease existing long prior to the date of his death and that his death was in no manner caused or aggravated by personal injuries sustained by him in an accident arising out of and in the course of his employment.

The evidence shows that the deceased and his family resided at Gering, Nebraska, prior to March 1, 1957. On September 28, 1956, he suffered a heart attack which was diagnosed as an acute anteroseptal wall infarction. He was released from the hospital on October 14, 1956, and returned to work on November 1, 1956. On November 13, 1956, he gave his physician a history of slight pain in the center of the chest on exertion. On December 5, 1956, he complained of a shortness of breath. On December 13, 1956, his physician advised him to continue to take digitalis. On February 28, 1957, he was advised by his physician to continue taking digitalis and to see another physician upon his removal to Cambridge. There is no evidence that he ever saw a physician after leaving Gering. About a week before his death he complained to defendant's office manager that he felt tired out. The evidence reveals no other complaints between March 1, 1957, and the date of his death.

Ten months after incurring his first heart attack the deceased was found dead under the circumstances hereinbefore related. Admittedly an autopsy would have conclusively established the cause of death. The deceased was interred in Portland, Oregon, and no autopsy was had before his removal to that point. The physician called to the scene of the alleged accident had moved from the community and he could not be found. His evidence was not available at the trial.

The plaintiff relies upon the evidence of Dr. John Batty, who testified in answer to a hypothetical question that the deceased, in his opinion, died as the result of

trauma. In the hypothetical question Dr. Batty was required to assume as proved that there was blood coming from the mouth and nose of deceased when he was found and that there was at least a quart of blood distributed on the seat, floor, and door of the cab of his pickup truck. Dr. Harvey L. Clark, the medical expert called by the defendant, admitted that, if it was established that deceased lost as much as a quart of blood, it would be strong evidence of hemorrhage induced by trauma. The amount of blood in the car therefore becomes an important factor in determining the correctness of the conclusions of the medical experts.

The evidence that there was one quart of blood in the pickup truck was furnished by the witness, George Kozak. This witness was a ditchrider for the district on the day of the alleged accident. He had seen the deceased earlier in the day. He came to the scene of the accident before the deceased was removed by ambulance. After the pickup was removed from the ditch he drove it home, where he and his wife washed the blood out with a garden hose. He says he inspected the pickup at the scene of the alleged accident and after he got it home. His testimony is that there was some blood splattered on the seat, the door, and the floor. Most of the blood that he saw was on the floor under the seat. He estimated the total amount of blood that he saw to be a quart, maybe more.

The evidence shows that the pickup was examined by the witnesses Mues and Jansen, the persons who discovered the pickup in the ditch. They observed blood on deceased's head and face, but did not observe the blood in the car. The sheriff and county attorney examined the pickup and found very little blood. They did not look under the seat. The county attorney testified that the amount of blood he saw did not exceed two tablespoonsfull. The sheriff also saw some blood but did not look under the seat. The witness Jansen

testified that he saw a very small amount of blood that appeared to be moving very slowly from the mouth of the deceased.

The witness Laurel Upward testified that he was a member of the Arapahoe Volunteer Fire Department and that he assisted in attempting to revive the deceased with a resuscitator. His evidence is that he saw no blood in the mouth and that there was no congestion of blood that interfered with the operation of the resuscitator. Two undertakers testified that there were no apparent injuries to the deceased other than the cut on the forehead. The undertaker who embalmed the deceased testified that the circulatory system of the deceased appeared to be normal when he injected embalming fluid, except for the cut on the forehead. Dr. Batty testified in rebuttal that an internal hemorrhage could have been sealed off by the clotting of the blood.

The medical experts testified that the loss of one quart or more of blood is relatively a very large amount. It would seem that some of the witnesses who inspected the pickup would have observed it if any such amount was present in the cab of the truck, particularly the sheriff and county attorney who were present for the very purpose of investigating the death of the deceased. We think the evidence clearly preponderates in favor of the defendant on this issue. The answer of Dr. Batty to the hypothetical question asked him, having been based largely on the loss by the deceased of one quart or more of blood, becomes of little assistance in determining the cause of death.

We think the plaintiff has failed to sustain the burden of proving that the death of deceased arose out of the employment. The evidence indicates that the pickup was out of control when it angled across the road and into the ditch. It clearly indicates that deceased lost possession of his faculties before the pickup went into the ditch and before deceased suffered any traumatic in-

jury. The argument that the deceased may have fallen asleep, or was examining his notebook, or that his attention was otherwise diverted from his driving, is pure conjecture. The history of the deceased's previous coronary attack, the nature of the heart damage previously incurred, the fact that he returned to work before the healing processes were complete, and the likelihood of a recurrence as shown in the evidence, all point to a second heart attack rather than to the negligent operation of the pickup by the deceased. In any event, the evidence is of such a character that we must hold that plaintiff failed to sustain her case by a preponderance of the evidence as the law requires.

In order that a recovery may be had for benefits under the Workmen's Compensation Act it must be proved that an accident occurred arising out of and in the course of the employment which resulted in disability or death. Eschenbrenner v. Employers Mutual Casualty Co., 165 Neb. 32, 84 N. W. 2d 169. The burden of proof is upon the plaintiff to prove that disability or death resulted from an accident arising out of and in the course of the employment. Whether death or disability resulted from an accident arising out of the employment, or whether the disability or death was caused by disease which brought on the purported compensable accident, is a question of fact to be determined from the evidence. In an appeal of such a case this court will try the issues de novo upon the record. Crable v. Great Western Sugar Co., 166 Neb. 795, 90 N. W. 2d 805. Under the evidence before us the plaintiff failed to overcome the proof that deceased died of a heart attack and that the alleged accident was incidental to it.

The trial court having arrived at the same conclusion, we affirm the judgment of the district court dismissing plaintiff's cause of action.

AFFIRMED.

MESSMORE, J., participating on briefs.