GORDON DEAN PITTENGER, APPELLANT, v. SAFEWAY STORES, INC., A CORPORATION, APPELLEE.

91 N. W. 2d 31

Filed June 20, 1958.   No. 34412.

*Smith Brothers,* for appellant.

*Stewart & Stewart,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The authority for this litigation is the Nebraska Workmen's Compensation Act. Appellant made claim thereunder to the Nebraska Workmen's Compensation Court for alleged disability resulting from a claimed accident and injury arising out of and in the course of employment of appellant by appellee. One of the judges of the compensation court heard the claim of appellant and granted him an award. The parties each waived rehearing in the compensation court and an appeal was taken by appellee to the district court for Dawson County. The district court found for appellee, dismissed the case, and denied a motion for new trial. This appeal contests the legality of the adjudication adverse to appellant.

Appellant was employed by appellee on March 5, 1956, the time of the alleged accident, the cause of this litigation, to perform services for it in the operation of its place of business in the city of Lexington. Appellant was then acting in the course and scope of his employment. His weekly compensation was $57.50.

A duty assigned appellant by his employer and which was performed by him was assisting in unloading merchandise transported by truck to the place of business

of appellee and the placing of the merchandise in a warehouse provided by the employer. This operation was accomplished in this manner: A truck containing the cargo of merchandise was parked near the warehouse. A conveyor extended from the truck into the warehouse. The items of the cargo were contained in 200 to 300 cardboard cartons of various sizes and weights. The operator of the truck, while remaining therein, placed the cartons on the conveyor and it carried them into the warehouse. Generally two employees of appellee removed the cartons and stacked them in the warehouse. Appellant participated in this operation every Monday on alternate months. He was employed by appellee from September 20, 1954, until the time of the alleged accident except for about 2 weeks of October 1955, during which he was employed by Jewel Tea Company.

The cartons containing the merchandise were stacked to a height variously estimated as around 10 or 12 feet, though the appellant said this was only a guess, and the height of the stacks of cartons on the day of the claimed accident was no greater than it had been on other occasions. Appellant and another employee of appellee were on the day of the alleged accident taking the cartons from the conveyor and stacking them in the warehouse. Appellant was at about 10 o'clock on that forenoon in the act of placing a carton containing 24 No. 2½ cans on the stack of cartons. He was doing this in the manner and by the means he had frequently done it before under identical or substantially similar conditions. He had his right hand at about a level with his chin under the carton and his left hand was on the side of it. He was in the act of getting ready to push or was pushing the carton up on top of the stack when his right hand, from an unknown cause, slipped. He lost control of the carton and it fell to the floor and broke open. The hands of appellant as the carton dropped after he lost control of it were above his belt and below his chest as

he attempted to catch it and prevent its completing the descent to the floor. The weight of the carton and its contents was estimated at 50 to 60 pounds. It was approximately 2½ feet long and about 1½ feet in width and depth. Appellant claims when he exerted himself in an attempt to recover control of the falling carton he experienced an accident and thereby an injury was inflicted upon him. He immediately suffered pain in his left hip at about the hip joint and the pain extended downward in the rear of the leg almost to the knee joint. It was described as a "shooting" pain that continued without regard to the position of the leg. He continued to work at the place of business until the truck was unloaded and until the noon hour. He handled the lighter cartons thereafter until the unloading of the merchandise was completed. He told the workman with whom he was associated in the unloading and stacking of the cartons sometime between 11 o'clock in the forenoon and 1 o'clock in the afternoon on March 5, 1956, that appellant thought he hurt his back sometime during the unloading of the truck, that his leg hurt, and that he thought he would consult a doctor concerning it. His wife during lunch hour made an appointment for appellant to consult the doctor at 4 o'clock that afternoon. Appellant resumed and performed the duties of his employment until he left to keep the appointment with the doctor. Appellant testified that he told his superior at the place of business where he was employed immediately before he left for the appointment made with the doctor that he had hurt his leg and was going to the doctor. The version of the superior of appellant was that he said his leg ached and that he had to go to the doctor. He did not say when he was going to call on the doctor. He said nothing about an accident or injury. He only said he had a pain in his leg, it ached, and that he would like to consult a doctor. Appellant worked the following day but did not appear for work thereafter. He gave no information

or notice to appellee that he was leaving its employment. He simply left the place of business at the end of the business day on March 6, 1956, and did not return.

Appellant consulted Dr. Olsson, resident in Lexington, who was a practicing physician and surgeon there since 1939. The doctor examined and prescribed for appellant on the day of the happening complained of herein and the doctor has prescribed for and treated him since that time. Appellant was placed in a hospital on March 7, 1956, subjected to an examination in which X-ray was used, and underwent appropriate treatment. This did not result in permanent relief. The doctor ascertained that there was a difference in the space between the last lumbar vertebra and the sacrum compared with the space between the other lumbar vertebrae. The space was narrowed. The doctor also learned that there was a tendency for a stress factor or a jarring force in the region of the lumbo-sacral joint because of the tendency of the lumbar vertebra to shove forward. This is known as spondylolisthesis. This joint did not set horizontally but in a slantwise position. The last lumbar vertebra was not squarely in the line of the curvature of the other vertebrae and it showed a tendency to slide forward. This caused stress and strain, and produced irritation to the nerve leading to the sciatic nerve trunk. This also indicated pressure on the cushion between the last lumbar vertebra and the sacrum. The doctor was then convinced of the presence of a protruded intervertebral disc and he has not had occasion to change his diagnosis in that respect. He examined appellant with the aid of the X-ray November 18, 1957. The condition of appellant as he found it March 7, 1956, existed on the latter date. The doctor gave appellant a neurological examination to ascertain changes in the reflexes, the nerve trunk activity, and the extent of the function of the lower back area. There was limitation of all motion of the lower back region. Any attempt to go too far in any direction produced

pain in the back of appellant and twinges of pain down the sciatic nerve on the left side. This was an expected result because of the lessened space between the lumbo-sacral vertebra and the sacrum. The nerve impingement in the area resulted in pain in the back region of the left leg.

It was the opinion of the doctor that appellant has a 20 percent bodily disability and that the cause of it was the accident he experienced and the injury he suffered to his back, as described by the doctor, on March 5, 1956, when appellant attempted to recapture the falling carton in the warehouse of appellee. The disability of appellant is permanent, his medical advisor believes, unless corrective surgery is submitted to and proves to be successful. The degree of improvement surgery would produce cannot be certainly known but in any event appellant would have some permanent bodily disability estimated at not less than 5 percent because of the injury to his back. The doctor testified that appellant cannot do general labor which produces stress and strain on the back region such as lifting, bending, doubling, stooping, and that sort of requirement. Appellant was examined by Dr. Long incident to his application for employment by appellee in September 1954, by Dr. Olsson when Jewel Tea Company was considering engaging appellant as its employee in October 1955, and by Dr. McGee incident to the return of appellant to work for appellee in October 1955. There was no report by any of them of back injury, disability, or any abnormal condition affecting appellant. He was employed following each examination and he worked continuously until his injury on March 5, 1956. The other evidence corroborates the opinion of the doctor of appellant in this regard. Appellant was only 21 years of age at the time of trial. He was a high school graduate and an athlete, without history of disabling illness or injury. He participated in high school football as a player for 4 years.

Dr. Olsson conducted a course of office treatments for appellant after he was released from the hospital in Lexington. The doctor advised appellant if he had a recurrence of pain, which he did, he should have orthopedic consultation to verify the opinion of the doctor that the appellant had a disc condition. Appellant sought and obtained orthopedic consultation at the Mayo Clinic in Rochester, Minnesota, on March 22 or March 23, 1956, where he remained for 6 days. The Mayo Clinic fitted appellant with a brace to support his back which he wore for 3 or 4 months continuously and thereafter when he was or might be subjected to any condition which could result in stress or strain on his back. The advice he got at the Mayo Clinic was to go home and await the result of the lapse of time and if his condition did not improve he should return to the clinic for consideration of surgery. He was told that if his condition did not improve the clinic would advise surgery.

The record establishes that appellant was totally disabled and unemployed from March 5, 1956, until May 10, 1956. He engaged in the work of an insurance salesman for about a year from May 10, 1956. He was inexperienced and untrained in that field and not too successful in the undertaking. He earned less than half the compensation he received while he was employed by appellee. Thereafter he was employed doing limited work, of short duration, for about 6 months. Physical strain or stress was not required in either of these engagements. Thereafter until the time of trial he was without employment because of physical inability to perform the work for which he was fitted and in which he had experience. He has no trade or skill of any kind. The field in which he had training and experience is grocery store work which requires physical exertion and lifting, stooping, twisting, and bending, all of which are denied to him because of his back condition. He has not since March 5, 1956, been capable of physical labor involving lifting, bending, or twisting

under a load of more than minimum weight. He has sought employment and has been received favorably until it was disclosed that he was a victim of a back condition.

The issue in this case as it is presented in this court is whether or not there was an accident March 5, 1956, which caused appellant injury within the provisions of the Workmen's Compensation Act. A compensable injury within the provisions of the act is one caused by an accident arising out of and in the course of the employment. Seger v. Keating Implement Co., 157 Neb. 560, 60 N. W. 2d 598. An accident within the meaning of the act is an unexpected and unforeseen event happening suddenly and violently, producing at the time objective symptoms of injury. § 48-151, R. R. S. 1943; Ruderman v. Forman Bros., 157 Neb. 605, 60 N. W. 2d 658. Symptoms of pain and anguish such as weakness or expressions of pain clearly involuntary or any other symptoms indicating a deleterious change in bodily condition may constitute objective symptoms within the requirements of the Workmen's Compensation Act. Knudsen v. McNeely, 159 Neb. 227, 66 N. W. 2d 412. An employee claiming the benefit of the act must, to succeed, show by the greater weight of the evidence that an accident occurred. Ruderman v. Forman Bros., *supra*. An appeal to this court in a workmen's compensation case is considered and determined de novo upon the record. Myszkowski v. Wilson & Co., Inc., 155 Neb. 714, 53 N. W. 2d 203; Fidelity & Casualty Co. v. Kennard, 162 Neb. 220, 75 N. W. 2d 553.

Appellee insists that the proof fails to show an accident within the meaning of the Workmen's Compensation Act. That there was an unexpected or unforeseen event happening suddenly and violently may not be successfully challenged. The evidence that there was is substantial. There is convincing proof of objective symptoms of injury. An injury suffered by appellant

March 5, 1956, arose, as he claims, out of and in the course of his employment.

Appellant incurred reasonable and necessary expenses in connection with securing medical relief for his physical condition arising out of the accident as follows: Lexington Community Hospital, Lexington, Nebraska, $44.15; Mayo Clinic, Rochester, Minnesota, $125; correction belt, $20; Dr. Olsson, Lexington, Nebraska, $78; Dr. Patton, Arapahoe, Nebraska, $15; expense of trip from Lexington, Nebraska, to Mayo Clinic, Rochester, Minnesota, and return, $100; expense of 5 trips from Lexington, Nebraska, to Arapahoe, Nebraska, and return, $28.

Appellant is entitled to recover from appellee temporary total disability for 9 3/7 weeks at $30 per week and for permanent partial disability for 290 4/7 weeks at $7.66 per week. § 48-121, R. S. Supp., 1955; Peek v. Ayres Auto Supply, 155 Neb. 233, 51 N. W. 2d 387. Appellant is also entitled to recover from appellee the items of expense incurred by him as set out above. § 48-120, R. R. S. 1943; Newberry v. Youngs, 163 Neb. 397, 80 N. W. 2d 165.

The judgment should be and is reversed and the cause is remanded to the district court for Dawson County with directions to render and enter a judgment for appellant and against appellee in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.