MANUEL SCHANHOLS, APPELLANT, v. SCOTTSBLUFF BEAN AND ELEVATOR COMPANY, A CORPORATION, APPELLEE.

97 N. W. 2d 220

Filed June 5, 1959. No. 34598.

*Wright, Simmons & Harris,* for appellant.

*Wiles, Adcock & Russell, Robert W. Haney,* and *Benjamin M. Wall,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action wherein Manuel Schanhols, plaintiff and appellant, seeks to recover workmen's compensation on account of an alleged accident and injury sustained by him while in the employ of Scottsbluff Bean and Elevator Company, a corporation, defendant and appellee. The action was originally instituted in the workmen's compensation court. In that court a trial was had which resulted in a finding and adjudication that the plaintiff had failed to sustain the burden of proving that he had suffered an accident as defined by the Nebraska Workmen's Compensation Act. From this adjudication the plaintiff appealed to the district court. A trial was had and the district court likewise found and adjudicated that he had failed to prove that he had sustained an accident as defined by the Workmen's Compensation Act. A motion for new trial was duly filed and overruled. From the judgment and the order overruling the motion for new trial the plaintiff has appealed.

The sole question presented for determination on the appeal is that of whether or not the plaintiff sustained the burden of proving that, as alleged, he suffered an accident arising out of and in the course of his employment by the defendant, as defined by the Nebraska Workmen's Compensation Act.

The case is triable de novo here, and to entitle the plaintiff to a recovery he must sustain the burden of proving by a preponderance of the evidence that he did suffer an accident arising out of and in the course of his employment. See, Tucker v. Paxton & Gallagher Co., 153 Neb. 1, 43 N. W. 2d 522; Anderson v. Cowger, 158 Neb. 772, 65 N. W. 2d 51; Pittenger v. Safeway Stores, Inc., 166 Neb. 858, 91 N. W. 2d 31.

An accident, within the meaning of the Nebraska Workmen's Compensation Act, is defined by statute as follows: "The word 'accident' as used in this act shall, unless a different meaning is clearly indicated

by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." § 48-151, R. R. S. 1943.

Specifically then to entitle the plaintiff to recover, the evidence must disclose preponderantly that the incident, as related to plaintiff and his employment, must have been an unexpected or unforeseen event. The event must have happened suddenly and violently. It could have happened with or without human fault. It must have produced at the time objective symptoms of an injury.

In order to ascertain whether or not the plaintiff suffered an accident within the meaning of the law it becomes necessary to examine the evidence which is descriptive of the occurrence which is the basis of the action.

The descriptive evidence in the record is fragmentary, incomplete, and uncertain; hence accuracy of description cannot be attained. From it however sufficient may be found to make reasonably clear the evidentiary features which are controlling in the determination of whether or not there was an accident.

The record discloses that in August 1957 the plaintiff became an employee of the defendant. The defendant operated an elevator wherein, among other things, it dealt in and processed beans. It had an elevator in Scottsbluff, Nebraska. On January 27, 1958, the plaintiff was warehouse foreman. On that date beans were being removed from storage in the elevator. The beans had been stored in a pit in the elevator structure. The pit is not described as to dimensions or otherwise except that it extended downward below what apparently was the main floor probably 6 to 8 feet. In the bottom of the pit were trap doors. This extension downward was into a room or pit described at one place as about 7 or 8 feet by about 5 feet, and at another as 12 to 15 feet by 6 feet. Apparently the floor

of the bean pit was a short distance above the floor of this other room or pit. This room was entered through an opening from above of about the size of 2 by 2 feet somewhere near the southeast corner of the floor space above the room. It was entered by extending a movable metal ladder to the floor below. A conveyor belt extended under the trap doors of the bean pit and thence south and outward to a point somewhere near the south side of the room. It appears that there was a gradual increase in elevation of the conveyor belt from the point where it left the pit to its outer end. At the outer end of the belt there was a chute which extended and opened into what is denominated a leg. This leg was probably an enclosed tube. It apparently extended both upward and downward from the chute. Somewhere in the room, probably near the southeast corner, was a motor to which was attached a chain. The conveyor was operated by this motor. The motor was controlled by a switch on the upper floor.

The manner of starting removal of beans was by starting the motor and opening a trap door under the pit. This would permit the beans to drop onto the conveyor and be carried thereon to the chute and over the chute into the leg where they would fall downward. Thereafter they were elevated through the leg to bins above from which they were loaded out.

Ordinarily when beans were being removed as these were the plaintiff and another employee attended the operation. One had his place on the floor above and the other below in the room which has been described. On one previous occasion the plaintiff alone was in attendance. One of the duties of the man below was to shovel back onto the conveyor beans which might leak out or fall therefrom. Also at times dirt in the beans, instead of going over the chute into the leg, would accumulate at the chute and thus prevent the beans from dropping into the leg. This happening was

of frequent occurrence and was nothing unusual or unexpected. When this happened it became necessary for a man in the room, with a broom provided for that purpose, to sweep out the dirt so that the beans could move over the chute into the leg. If only one man was present and if he was on the higher level it became his duty to descend by the metal ladder into the room, secure the broom, and sweep away the dirt.

According to the substance of the testimony given by plaintiff at the trial in the compensation court, on the date in question, dirt piled up and the plaintiff, as he had done on several other occasions and in the same manner, descended the ladder in a hurry to sweep it away. After he got down the ladder he went over the motor, picked up the broom, and turned to shovel in beans. When he did this an "awful pain" hit him in the back. He then crawled up out of the hole and shut off the motor. Plaintiff said he had passed over the motor and his feet were on the floor when the pain struck him. Later at the same trial he said that he fell after he had the pain and he was pretty sure this was after he left the ladder and was on the floor after going over the motor. He had proceeded to perform the same operation in the same manner dozens of times.

On the trial in the district court the plaintiff testified that he descended the ladder about as he stated before the compensation court. He went down the ladder, reached for and got the broom, turned, felt the pain, and fell on the chute. He said that the operation in the room was the same whether one or two men were working, the only difference being that if two were working there was not the need to be in as much of a hurry. He described the course of events after leaving the ladder as follows: "Well, I just jumped over all of the works in one operation, jumped over the motor and grabbed the broom and turned and started shoveling them in." He said that he was across the motor before he felt any pain. He said that he had done

this same thing "Quite a few times, maybe six, seven, eight, I don't know, maybe more."

In a narrative statement signed by the plaintiff dated February 17, 1958, the following appears: "I went down the ladder and got off the ladder and was standing on the cement floor. I did not feel anything wrong as I went down the ladder and after I had both feet on the floor I suddenly felt a pain just like somebody hit me with a sledge-hammer. This pain was low in the small of my back. I was not carrying anything down the ladder, and was just going to reach for the broom when I felt the pain. The broom was setting in the corner by the chute just an arms reach from where I was. I reached over for the broom with my left hand and then I felt this pain for the first time, that is when it hit me." Further in this statement he said he did not stumble, the floor was not slippery, and he did not lose his balance before the pain hit him.

Applying the rules for the determination of whether or not there has been an accident to the evidence, it appears proper to propound and respond to certain questions. The first of these is, was there proof of an unexpected or unforeseen event which culminated in injury to the plaintiff? The answer must be a negative one. As pointed out, it is disclosed that this stoppage of passage of beans over the chute was not unexpected or unforeseen. It happened, as he well knew, on numerous occasions before, and one of the duties of plaintiff was to watch for and in the event of such occasions to take corrective measures by the means and in the manner employed in this instance.

Is there any evidence of suddenness or violence? The evidence discloses that urgency under the circumstances existed but no more than was true on other such occasions. The only evidence of violence was the speed at which plaintiff descended the ladder and passed over the motor. There is no evidence of departure from usual custom in this connection. He was down the

ladder, over the motor, and had turned and reached for or picked up the broom before he felt any pain. If the thing which caused plaintiff's injury flowed from what happened there it happened with suddenness. There is however an absence of proof as to the cause. This leaves the record without legal proof of violence. Any other conclusion would have to rest on possibilities, probabilities, and conjecture. An award in a workmen's compensation case may not so rest. "A compensation award cannot be based on possibilities or probabilities but must be based on sufficient evidence that the claimant incurred a disability arising out of and in the course of his employment." Anderson v. Cowger, *supra*. See, also, Meester v. Schultz, 151 Neb. 614, 38 N. W. 2d 739; Beam v. Goodyear Tire & Rubber Co., 152 Neb. 663, 42 N. W. 2d 293; Ruderman v. Foreman Bros., 157 Neb. 605, 60 N. W. 2d 658. It must be said therefore that within the meaning of the Workmen's Compensation Act the record fails to contain proof of an accident.

The plaintiff has called attention to the following cases which he contends are comparable in point of fact in which this court held that there was proof of an accident: Tucker v. Paxton & Gallagher Co., *supra;* Anderson v. Cowger, *supra;* Pittenger v. Safeway Stores, Inc., *supra*.

These cases are not comparable. In each there was evidence to meet the requirements of the statutory definition of an accident. In Tucker v. Paxton & Gallagher Co., *supra,* the employee was handling a paper sack containing coffee cans. It suddenly "broke or tore" and he grabbed the bag to keep it from falling apart in consequence of which he suffered pain and was injured.

In Anderson v. Cowger, *supra,* the plaintiff was blinded by snow which was being carried in the air by a wind of a velocity of 40 to 50 miles an hour. He hit a snowbank and was thereby jarred. He smelled gas

fumes, and because he could not open a door of the car he crawled out of a door window. He waded 30 to 50 yards and got into the cab of a snowplow.

In Pittenger v. Safeway Stores, Inc., *supra*, the plaintiff, in the ordinary course of handling merchandise, was placing a carton containing 24 No. 2½ cans on a stack of cartons and in the act of getting ready to push or pushing up the carton his right hand slipped and he lost control of the carton. He attempted to recover control of the falling carton.

In each of these instances the evidence disclosed, as pointed out, there was an unexpected and unforeseen event which happened suddenly and violently. The same may not be said of the evidence in the case here.

For the reasons set out herein the judgment of the district court is affirmed.

AFFIRMED.