EDWARD J. WENGLER, APPELLANT, V. GROSSHANS LUMBER COMPANY, A CORPORATION, ET AL., APPELLEES.

115 N. W. 2d 415

Filed May 25, 1962. No. 35244.

*Edgerton & Andrews,* for appellant.

*Walter P. Lauritsen,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, SPENCER, BOSLAUGH, and BROWER, JJ., and CHADDERDON, District Judge.

MESSMORE, J.

This is a proceeding under the Nebraska Workmen's Compensation Act. The plaintiff was an employee of Grosshans Lumber Company, a corporation, hereinafter referred to as the defendant or lumber company. The other defendant was the insurance carrier for Grosshans Lumber Company. Following a hearing before a single judge of the workmen's compensation court, the action was dismissed. The plaintiff then appealed directly to the district court for Hamilton County which, after trial, entered an order of dismissal. The plaintiff's motion for new trial was overruled and the plaintiff perfected appeal to this court.

The plaintiff's petition on appeal alleged in substance that while the plaintiff was in the employ of the lumber company at Aurora, on June 9, 1960, he received personal injuries in an accident arising out of and in the course of his employment as a yardman; that as a part of his duties he was unloading some heavy pipe from a truck, under the supervision of his employer; that he was holding one end of the pipe and another person was holding the other end, and that the end held by such other person accidently hit the ground, causing the end held by the plaintiff to fly up and strike him on the chin, causing him to have a severe scar on the chin, a

severe cut on his tongue and lower lip, and the loss of all of his teeth, which injuries are permanent; that the cut on the plaintiff's tongue caused a defect which caused the plaintiff to suffer a speech impediment; that all medical and hospital bills have been paid; that nothing has been paid to the plaintiff by the defendants under the provisions of section 48-121, R. R. S. 1943; that the plaintiff went to such doctors and dentists as were approved by the defendants, to be treated for his injuries; that at the time of the accident the plaintiff was earning approximately $65 a week; that the plaintiff had suffered no industrial disability, but had suffered permanent injuries which should be compensated for under subsection (3) of section 48-121, R. R. S. 1943; that under such subsection the showing of an industrial disability is unnecessary; and that the plaintiff had made claim for workmen's compensation under subsection (3) which the defendants refused to pay. The plaintiff prayed that the court determine the nature and extent of plaintiff's permanent injuries in accordance with the Nebraska Workmen's Compensation Act, and make an award of compensation to the plaintiff for such relief as he might be entitled to; and that the order of dismissal of the plaintiff's action by the workmen's compensation court be vacated and set aside.

The defendants' answer admitted that the plaintiff sustained an injury on June 9, 1960, which amounted to an accident within the definition of the Nebraska Workmen's Compensation Act; and that the accident arose out of and in the course of the plaintiff's employment with the lumber company. The defendants' answer affirmatively alleged that the plaintiff continued in his employment and received his regular wages, and did not lose sufficient time from his employment to cover the waiting period provided in the Nebraska Workmen's Compensation Act; that the plaintiff suffered no temporary total disability within the provisions of the act; that defendants were not liable to the

plaintiff for compensation for temporary disability; that all medical, hospital, and dental care and cost of dentures had been paid by the insurance carrier for the lumber company under the provisions of the compensation act; that the cuts sustained by the plaintiff to his chin, lip, and tongue had healed without industrial disability or loss of employability or earning power; that the plaintiff had suffered no permanent partial disability within the definitions of the Workmen's Compensation Act; and that the defendants had fully complied with their duties and liabilities to the plaintiff under the Workmen's Compensation Act. The defendants prayed that the plaintiff's petition be dismissed.

The plaintiff's reply denied all allegations of the defendants' answer not specifically admitted.

The plaintiff sets forth several assignments of error which may be summarized as follows: The trial court erred in holding that the injuries suffered by the plaintiff did not entitle him to compensation under the Workmen's Compensation Act.

The plaintiff testified that he was employed by the lumber company in Aurora; that he was a yardman, and his duties were to take care of the yard, run deliveries, take care of customers, and do other work incident to his employment; that the assistant manager of the lumber company called him to go after some pipe which was 28 or 30 feet in length; that they went to Baasch's blacksmith shop, and Baasch took hold of the front end of the pipe and they started to take the pipe off the truck; that the pipe slipped out of Baasch's hand, became unbalanced, "flew" up and hit the plaintiff under the chin and threw him into the air, causing him to bleed from the chin; that Eddie Daniel loaded the plaintiff into a truck and took him to the hospital; that the pipe which struck the plaintiff under the chin knocked his teeth through his tongue, cut his lip open, and made a horseshoe-shaped cut on his chin; that after he arrived at the hospital a doctor sutured his cuts; that the

cut on his tongue bothers him every once in a while so that his tongue stings; that he gets some of his letters mixed up; that as a result of the injuries he has become nervous; and that the teeth he now has do not fit his mouth, are loose, and bother him to the extent that he is unable to chew his food the same as he did prior to the accident.

On cross-examination the plaintiff testified that the great bulk of his work was outside; that he missed a day and a half of work as a result of the accident; that for a period of more than a year after the accident the plaintiff performed the same duties as he did prior to the accident; that he terminated his employment with the lumber company voluntarily; and that he was paid in full for the time lost from his employment. The plaintiff further testified on cross-examination that he had an eighth-grade education; that he did farm work for his father and drove a truck for himself for a year or so before he went to work for the lumber company; and that his working life had been devoted to farm work, trucking, and as a yardman for the lumber company.

On redirect examination the plaintiff testified that while he was working as a yardman he was paid $260 to $270 a month.

Dr. J. E. Shafer testified that he was a dentist; that he was acquainted with the plaintiff and had known him over a period of 10 or 12 years; that the plaintiff had been a patient of his; that he saw the plaintiff in his office and took a full-mouth X-ray; that upon examination of the X-ray he found that the condition of the plaintiff's teeth could have been caused by an outward injury; that the hygienic condition of the plaintiff's mouth was not first-rate; that there were three back teeth which were injured; and that he recommended that all of plaintiff's teeth be removed and replaced with full dentures rather than resupplying the teeth that were lost with partial dentures which would have been adjacent to the teeth that were not healthy enough to

support the partial dentures properly. This witness further testified that on July 18, 1960, a full X-ray was taken of the plaintiff's mouth; that on October 31, 1960, the upper and lower impressions were made for immediate dentures; and that on November 4, 1960, he extracted 30 of the plaintiff's teeth at the Aurora hospital and the dentures were inserted, and were refitted at a later date. The doctor further testified that the accident suffered by the plaintiff was not the entire cause of having all of his teeth removed; and that it was his professional judgment when he looked at the condition of the plaintiff's mouth that he could not do the plaintiff a service that would in any way be permanent or satisfactory to him or good for his physical condition otherwise than by removing all of his teeth, and this he recommended. Professionally, the doctor felt that this would constitute a better service to the plaintiff than he could give him otherwise. The doctor further testified that using false teeth is not a permanent injury to any person.

Dr. E. A. Steenburg, a physician in Aurora, testified that he was acquainted with the plaintiff and had known him for approximately 10 years; that the plaintiff had been his patient on occasions; that he examined the plaintiff 2 or 3 days after the accident; that his examination revealed a 5-centimeter laceration of the plaintiff's chin, a 3-centimeter laceration of his tongue, and a 5-square centimeter abrasion laceration on the inside of his lower lip; that the cut on the plaintiff's chin had been sutured the day of the accident by Dr. Don Steenburg; that the cut on the plaintiff's tongue was due to contact with a tooth at the time of the accident; that the cut on the plaintiff's tongue had healed; and that there was a 3-millimeter scar about one-eighth of an inch deep on the end of the plaintiff's tongue which would be there permanently. The doctor further testified that he noticed the plaintiff had difficulty in pronouncing his "f's" and "s's"; that the lisp could be due to the cut or scar on

the plaintiff's tongue; that the scar on the plaintiff's chin could be removed, to be replaced by another scar; that the scar that the plaintiff now has on his chin is permanent; and that the cut on the plaintiff's lower lip is no longer present.

On cross-examination this doctor testified that the scar on the plaintiff's chin, over a period of time, would become less, and that it had become less in the intervening year and a half; that the cut on the plaintiff's tongue medically had produced a good result; that he had no recollection as to whether the plaintiff might have had a difficulty in pronouncing the two letters mentioned prior to the time of the accident; and that he had no opinion in that regard.

On redirect-examination the doctor testified that the scar on the plaintiff's tongue might possibly be the cause of the plaintiff's speech impediment or his lisping, and on recross-examination he said he would place that in the realm of possibility.

The plaintiff's wife testified that she saw the plaintiff after the accident about 2:30 p.m., when he came home; that the plaintiff had a bandage on his chin, his tongue was cut, his lip cut inside, and his teeth were loosened; and that the plaintiff kept the bandage on his chin for from 3 or 4 days to a week. As to the scar on the plaintiff's chin, it has lessened, but can still be seen plainly, and is not as big as it was. She further testified that as to the injury to the plaintiff's tongue, he did not talk for 3 or 4 days after the accident until the swelling of his tongue went down; that the tongue still bothers him but is a little better; that she has to ask the plaintiff to repeat on occasions; that the plaintiff is more nervous than he was before the accident; that the children make him nervous which was not true prior to the accident; that before the accident the plaintiff's teeth were real good and he never complained of a toothache; and that since the accident he complains about his teeth, and eats only soft foods.

Edward G. Daniel testified that he was the manager of the lumber company and had known the plaintiff nearly 10 years while he was employed by the lumber company; that he and the plaintiff saw each other many times daily while they were both working; that the plaintiff was primarily a truck driver and yardman; that the plaintiff was responsible for loading and unloading cars of materials, and taking deliveries from the yard to different jobs and different customers; that as part of his job the plaintiff was required to wait on customers in the yard with respect to filling orders; that direct selling of materials on the part of the plaintiff would be a minimum part of his job; that the plaintiff continued to perform the same duties after the accident as he did before; that there was no variation in the plaintiff's effectiveness or efficiency in carrying out the duties assigned to him; that he noticed no nervousness on the part of the plaintiff after the accident which interfered with his work; and that he could detect no difference in the plaintiff's speech after the accident and prior to the accident, nor any change in such respect. "On appeal to this court in a workmen's compensation case the cause is considered de novo upon the record before us." Knaggs v. City of Lexington, 171 Neb. 135, 105 N. W. 2d 727.

The plaintiff cites section 48-109, R. R. S. 1943, which provides in part: "If both employer and employee become subject to sections 48-109 to 48-147, both shall be bound by the schedule of compensation provided in section 48-121, which compensation shall be paid in every case of injury or death caused by an accident * * * arising out of and in the course of employment, * * *."

The plaintiff contends that under the above-cited statute there are four prerequisities to a compensable claim: (1) An injury; (2) an accident; (3) such accident must arise out of and in the course of employment; and (4) no willful negligence on the part of the em-

ployee. The plaintiff further contends that if and when such prerequisites are proved, every case shall be compensated for under section 48-121, R. R. S. 1943.

In the instant case there was no willful negligence on the part of the employee.

Section 48-121, R. R. S. 1943, provides for compensation for total disability and for disability partial in character, except particular cases mentioned in subsection (3) of this section which covers the loss of definite members of the body resulting from permanent injury. This section further provides: "Should the employer and the employee be unable to agree upon the amount of compensation to be paid in cases not covered by the schedule, the amount of compensation shall be settled according to the provisions of sections 48-173 to 48-185."

The plaintiff cites Wilson v. Brown-McDonald Co., 134 Neb. 211, 278 N. W. 254, 116 A. L. R. 702, stating that in the cited case the phrase contained in section 48-121, R. R. S. 1943, "in cases not covered by the schedule," meant all other cases not specifically set forth in subsection (3) of such statute which fell within the intent and purpose of the Nebraska Workmen's Compensation Act.

As before stated, the plaintiff having contended that he has met the four prerequisites as contained in section 48-109, R. R. S. 1943, to a compensable claim, his injuries fall within the intent and purpose of the compensation act, and though his injuries are not specifically mentioned in the schedule of injuries in subsection (3) of section 48-121, R. R. S. 1943, still they come within the phrase "in cases not covered by the schedule" contained in said subsection (3), therefore, the court must fix the award or amount of compensation as contemplated by section 48-121, R. R. S. 1943.

The plaintiff asserts that the applicable rule for construction of the Workmen's Compensation Act is that it be liberally construed to the end that its beneficent purposes may not be thwarted by technical refinement of

interpretation. See Haler v. Gering Bean Co., 163 Neb. 748, 81 N. W. 2d 152.

"In considering the sufficiency of the proof it should be remembered the rule of liberal construction, as it relates to the workmen's compensation act, applies to the law and not to the evidence offered to support a claim by virtue of the law. The rule does not dispense with the necessity that claimant prove his right to compensation; that is, it does not permit a court to award compensation when the required proof is lacking." Knaggs v. City of Lexington, *supra*.

"The workmen's compensation law should be liberally construed to carry out its beneficent purposes, but under the guise of a liberal construction it should not be extended to cases which by plain language are excluded from its scope." Bekelski v. O. F. Neal Co., 141 Neb. 657, 4 N. W. 2d 741.

In Berry v. School District, 154 Neb. 787, 49 N. W. 2d 617, this court said: "Under the Nebraska Workmen's Compensation Act the rights of the plaintiff and the liabilities of the defendant are fixed by the terms of the statute."

The plaintiff asserts that Nebraska has recognized "disfigurement" as being a type of injury which is compensable under the Workmen's Compensation Act. In this connection, the plaintiff makes reference to Wilson v. Brown-McDonald Co., *supra*. In the cited case this court said: "Disfigurement resulting from severe third-degree burns to the face is to be considered in the light of the general statutory purpose to provide compensation for personal injuries, and is within the meaning of the language contained in section 48-121, * * *." In the cited case the claimant was a high school graduate, had 1½ years of college training, was 20 years old, had done retail sales work in a grocery store and a clothing store, and had worked for a laundry. He received third-degree burns over his entire face while working in the course of his employment. Witnesses who were mer-

chants testified to the effect that they would not employ the claimant in their place of business on account of his facial disfigurement. The court went on to say: "The workmen's compensation act of the state of Nebraska does not contain specific language having to do with facial disfigurement of a severe nature." The plaintiff's facial disfigurement was shocking and severe to the extent that he was unable to procure employment of any kind or nature. The court held that the claimant in the cited case was permanently and totally disabled under subsection (1) of section 48-121, Comp. St. 1929 (now section 48-121, R. R. S. 1943).

It is obvious that in the cited case this court recognized that the schedule as stated in subsection (3) of section 48-121, contained no provision for severe disfigurement of the face, but as heretofore mentioned, determined the case under subsection (1) of section 48-121, Comp. St. 1929.

The evidence in the instant case shows no such facial disfigurement as appeared in the case of Wilson v. Brown-McDonald Co., *supra,* nor does it show total permanent disability as appeared by the evidence in that case. The cited case is no authority supporting the plaintiff's claim for compensation.

It will be noted that under the provisions of section 48-121, R. R. S. 1943, the statute refers to "disability." There are many definitions of the term "disability" as it relates to workmen's compensation.

"To qualify the employee to receive compensation indemnity, the impairment of bodily function must be such as to adversely affect his earning capacity. Disability, for purposes of compensation indemnity, means impairment of earning capacity, * * *. It connotes an inability to perform physical functions required in working to a degree normal to the human being." 1 Campbell, Workmen's Compensation, § 803, p. 711.

The term "disability" as used in the Workmen's Compensation Act is to be measured by the capacity or in-

capacity of the employee to earn wages he was receiving at the time of injury, and is confined to the loss of ability to earn in the same or any other employment. See Branham v. Denny Roll & Panel Co., 223 N. C. 233, 25 S. E. 2d 865. In the above case it was held that under the Workmen's Compensation Act defining disability, there is no "disability" if the employee is receiving the same wages in the same or any other employment.

There are cases too numerous to cite adopting the above rule, and this apparently is the general rule throughout the United States relating to workmen's compensation acts.

In the instant case there is no evidence that the plaintiff was in any manner disabled from performing the work that he had been doing prior to the accident. In fact, he worked for the lumber company for some considerable time after the accident, performing the same duties that he did before the accident. He lost no time from his work except as heretofore shown by the evidence, and for which he was paid. The record further shows that his medical, hospital, and dental bills were paid in full.

This court has held: "Where an employer furnishes medical, surgical, and hospital services to an employee the payments therefor constitute payment of compensation within the meaning of the Workmen's Compensation Act." Gourley v. City of Grand Island, 168 Neb. 538, 96 N. W. 2d 309. See, also, Baade v. Omaha Flour Mills Co., 118 Neb. 445, 225 N. W. 117.

The record discloses certain evidence that is in conflict, therefore the following rule is applicable to this case.

"Where the evidence is conflicting and cannot be reconciled, this court, upon a trial de novo in a workmen's compensation case, will consider the fact that the trial court observed the demeanor of witnesses and gave credence to the testimony of some rather than to the contradictory testimony of others." Cole v. Cushman

Motor Works, 159 Neb. 97, 65 N. W. 2d 330.

In considering the evidence and the authorities above cited, we conclude that the judgment of the trial court should be affirmed.

AFFIRMED.